**SMITHFIELD CONCERNED CITIZENS FOR FAIR ZONING, et al., Plaintiffs, Appellants,**

v.

**The TOWN OF SMITHFIELD, etc., et al., Defendants, Appellees.**

No. 89–1819.

United States Court of Appeals, First Circuit.

Heard Feb. 5, 1990.

Decided July 2, 1990.

As Amended July 3, 1990.

---

**240**

John B. Webster with whom Michael A. Kelly and Adler Pollock & Sheehan Inc., Providence, R.I., were on brief, for plaintiffs, appellants.

C. Russell Bengtson and Edmund L. Alves, Jr., with whom Carroll, Kelly & Murphy, Gorham & Gorham, Edward W. Moses and Asquith, Merolla, Anderson, Ryan & Wiley, Providence, R.I., were on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge, BOWNES, Senior Circuit Judge, and CYR, Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

The twenty-five appellants brought suit in the district court against the Town of Smithfield, Rhode Island, the Town Council, and the individual Council members, seeking a declaration that a new zoning ordinance adopted by the Town Council was invalid, an injunction against its enforcement, and $50 million in damages. The district court dismissed the complaint for failure to state a claim upon which relief may be granted. 719 F.Supp. 75. This appeal followed.

The challenged new zoning ordinance (the "Ordinance") affects large portions of the town.[1] It provides for a variety of residential, commercial, industrial and public uses, prescribes the geographical districts where each use will be permitted, establishes performance standards addressing a number of environmental concerns, and creates a zoning board of review empowered to interpret the Ordinance and grant variances and exceptions. The plaintiffs allege that the Ordinance has substantially altered the municipality's zoning designations in ways that adversely impact upon them. Most complain that it changed the designation of their property from commercial or industrial to residential.

Eighteen of the 25 plaintiffs are individuals or entities that own property and/or

---

**1.** Under Rhode Island law, a town council is authorized to adopt zoning ordinances for the town. R.I.Gen.Laws § 45–24–1 *et seq.* In 1982 the Town of Smithfield commenced a study of its existing zoning ordinance and map. Major revisions were eventually proposed, were published in local newspapers, and were the subject of hearings. The new ordinance was adopted on April 14, 1987.

operate businesses in Smithfield. Four plaintiffs were identified only as individuals who live outside of Smithfield or persons who claim to have been damaged in some unspecified way. The remaining plaintiffs are Smithfield Concerned Citizens for Fair Zoning, described as a nonprofit organization located in Smithfield, and two of its principals.

Suing under 42 U.S.C. § 1983, plaintiffs challenged the new Ordinance and defendant's actions on numerous grounds, including that they violated the takings clause of the Fifth Amendment and the due process clause of the Fourteenth Amendment; the conspiracy section of the Civil Rights Act, 42 U.S.C. § 1985(3); the Fair Housing Act of 1968, 42 U.S.C. §§ 3601 *et seq.;* and a variety of state constitutional and statutory provisions. The district court addressed and rejected each of these attacks in its opinion. On appeal plaintiffs focus on the argument that the Ordinance, on its face, violates their right to substantive due process derived from the Fourteenth Amendment of the Federal Constitution.

Plaintiffs' claims of error amount to three separate contentions:

1. The district court erred in holding that their claims were not yet ripe for review because they had not availed themselves of the procedures required to obtain a variance under the challenged Ordinance. Plaintiffs argue that a variance would not redress their injury, which derived from the act of passing the Ordinance. The gravamen of their claim is that the Ordinance, by its very existence, violates their fundamental constitutional right under the due process clause of the Fourteenth Amendment to be free from the enactment of "arbitrary, capricious and unreasonable" legislation; and such a claim, they assert, is ripe for review the moment such an ordinance comes into existence.

2. The district court erred in dismissing their substantive due process claim on the merits. The Ordinance, they argue, is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare."

*Euclid v. Ambler Realty Co.,* 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926). The provisions of the Ordinance (the Ordinance has transformed over half the land in the town into non-conforming uses, has increased minimum lot size to 4.6 acres in some segments and 2.6 acres in others, has increased residential frontage, set back and density requirements, and has converted land formerly zoned commercial or industrial into residential even though residential use is allegedly incompatible with existing uses in the immediate vicinity) are alleged to harm, rather than benefit the town; and it is further alleged that the Ordinance was adopted in a totally arbitrary way, without any consideration at all being given to existing conditions, the needs of the town, principles of sound land-use planning, and considerations of fairness.

3. The court erred in making a specific factual finding in ruling on the defendants' motion to dismiss—i.e., that the purposes stated in the preamble to the Ordinance were the "actual" purposes of the Town Council in passing the Ordinance—when it should have limited itself to rulings of law.

We discuss each of the above in turn.

## I. RIPENESS

■ The district court invoked *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), in support of its ruling that plaintiffs' substantive due process claim cannot be deemed ripe until plaintiffs have sought final decisions from the Smithfield Zoning Board by applying for variances. Until that time, said the court, there is no basis for determining whether or to what extent they have been deprived of their property.

*Williamson* was a suit by a developer whose plans for developing a particular tract of land had been blocked by a change in the local zoning laws. The suit was brought on the basis of both the just compensation clause and the due process clause. The Supreme Court held that a regulatory taking claim invoking either of the two clauses was unripe until the gov-

ernmental entity charged with implementing the regulation had reached a final decision regarding the application of the regulations to the property at issue. A final decision would not be reached until concrete plans for development were submitted and disapproved and application for variances made and denied.

*Williamson,* however, is inapposite to the present case. The theory of due process invoked by the plaintiffs in *Williamson* was that "regulation that goes so far that it has the same effect as a taking by eminent domain is an invalid exercise of the police power, violative of the Due Process Clause of the Fourteenth Amendment." *Williamson,* 473 U.S. at 197, 105 S.Ct. at 3122. Under this particular theory of due process, the step of applying for variances must of necessity become a prerequisite to bringing a due process challenge—whether facial or as-applied—because only by applying for variances would it become possible to learn whether or not the zoning ordinance had the same effect as a taking by eminent domain. If a variance were granted, any taking claim would disappear. Here, plaintiffs' theory of substantive due process is markedly different from that propounded in *Williamson.* Rather than relying on *Pennsylvania Coal v. Mahon,* 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922) (regulation that goes too far will be recognized as a taking), as did the plaintiff in *Williamson,* plaintiffs here invoke what they style their "fundamental constitutional right to be free from arbitrary, capricious and unreasonable legislation." Under this theory, they assert that

the Ordinance, as a whole, is arbitrary, capricious and unreasonable, entitling them to a declaration that the Ordinance is invalid on its face. As in *Euclid v. Ambler Realty Co.,* 272 U.S. at 386, 47 S.Ct. at 117–18:

> The effect of the allegations of the bill is that the ordinance of its own force operates greatly to reduce the value of appellee's lands and destroy their marketability for industrial, commercial and residential uses; and the attack is directed, not against any specific provision or provisions, but against the ordinance as an entirety. Assuming the premises, the existence and maintenance of the ordinance, in effect, constitutes a present invasion of appellee's property rights and a threat to continue it. Under these circumstances, ... jurisdiction is clear.[2]

The district court erred in ruling that a facial substantive due process challenge to a zoning ordinance under the above theory is not ripe for adjudication until variances have been applied for (and inverse condemnation proceedings invoked)[3]. *See Euclid v. Ambler Realty Co.,* 272 U.S. at 386, 47 S.Ct. at 117 (A suit to enjoin the enforcement of a zoning ordinance with respect to the plaintiff's land need not be preceded by any application on his part for a building permit, or for relief under the ordinance from the zoning board of appeals, where the gravamen of the bill is that the ordinance of its own force operates unconstitutionally to reduce the value of the land and destroy its marketability, and the attack is not against specific provisions but against

---

**2.** The text immediately preceding the quoted portion is as follows:

> A motion was made in the court below to dismiss the bill on the ground that, because complainant had made no effort to obtain a building permit or apply to the zoning board of appeals for relief as it might have done under the terms of the ordinance, the suit was premature.

**3.** The Town argues that not only must plaintiffs show that a variance has been denied or that seeking a variance would be futile but they must also first avail themselves of Rhode Island state procedures for the bringing of an inverse condemnation action that allows property owners to obtain just compensation when government

regulation unconstitutionally deprives them of an interest in their property. *Williamson,* however, negates the requirement that plaintiffs in this case invoke inverse condemnation proceedings by stating that "[t]he remedy for a regulation that goes too far, under the due process theory, is not 'just compensation,' but invalidation of the regulation, and if authorized and appropriate, actual damages." *Id.* at 197, 105 S.Ct. at 3122. Since even success in an inverse condemnation action would not negate plaintiffs' right to have the zoning ordinance invalidated should they succeed in their due process claim, the invocation of state inverse condemnation procedures should not be a prerequisite to bringing suit under the due process clause.

the ordinance in its entirety.); *Pennell v. City of San Jose*, 485 U.S. 1, 9–14, 108 S.Ct. 849, 856–59, 99 L.Ed.2d 1 (1988) (plaintiff's "taking" claim was premature, as plaintiff had failed to avail himself of the provisions of the ordinance permitting relief from its burdens, but plaintiff's facial substantive due process challenge was not unripe for consideration); *Beacon Hill Farm Assocs. II v. Loudoun County Bd. of Supervisors*, 875 F.2d 1081, 1084–85 (4th Cir.1989) (A developer's claim that a zoning ordinance regulating mountainside development was facially unconstitutional as a violation of substantive due process was ripe for adjudication; there was no necessity for final determination of the extent of the ordinance's application to the specific piece of property following application for the proper permits.[4]); *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1574 n. 8 (11th Cir.1989) ("A property owner has been denied substantive due process ... the moment a governmental decision affecting his property has been made in an arbitrary and capricious manner, regardless of whether he is later compensated for that violation."); *Crow–New Jersey 32 Ltd. Partnership v. Township of Clinton*, 718 F.Supp. 378, 381–82 (D.N.J.1989) (facial substantive due process challenge to zoning ordinance deemed ripe even though plaintiffs had failed to submit a development plan to the planning board or seek a variance or otherwise seek compensation through available state court remedies).

In rejecting the district court's view that seeking a variance was a necessary precondition to plaintiffs' presentation of their due process claim, we do not mean to suggest that the claim has merit. To the contrary, we agree with the district court that the due process claim has little substance and turn now to that issue.

## II. SUBSTANTIVE DUE PROCESS

The test to be applied in considering substantive due process challenges [5] to a land use ordinance was established early on: "a court should not set aside the determination of public officers in [zoning] matter[s] unless it is clear that their action 'has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense.'" *Nectow v. Cambridge*, 277 U.S. 183, 187–88, 48 S.Ct. 447, 448, 72 L.Ed. 842 (1928), quoting *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926). The appropriateness of this test has been reaffirmed on numerous occasions in more recent decisions. *See, e.g., Pennell v. City of San Jose*, 485 U.S. 1, 11, 108 S.Ct. 849, 857, 99 L.Ed.2d 1 (1988) (A state price-control regulation is unconstitutional under the due process clause only if " 'arbitrary, discriminatory, or demonstrably irrelevant to the policy the legislature is free to adopt.'" [quoting *Permian Basin Area Rate Cases*, 390 U.S. 747, 769–70, 88 S.Ct. 1344, 1361, 20 L.Ed.2d 312 (1968) (quoting *Nebbia v. New York*, 291 U.S. 502, 539, 54 S.Ct. 505, 516, 78 L.Ed. 940 (1934)) ]); *Roberts v. City of Woonsocket*, 575 F.2d 339, 340–41 (1st Cir.1978) (The only federal issue in a landowners' action alleging that rezoning was an unlawful exercise of police power and deprived them of their property without due process was whether zoning amendments restricting property in their segment to single-family houses were clearly arbitrary and unreasonable, having

---

**4.** While the complaint [that the zoning ordinance violates the due process clause in that it is unreasonable, arbitrary, and capricious and bears no substantial relationship to the advancement of a legitimate state interest] is couched almost completely in conclusory terms, ... it should not have been dismissed as being premature. [citations omitted] In view of the fact that a facial challenge to a land use ordinance must carry such a heavy burden of persuasion that it may even seem that the claim of facial invalidity is entirely without merit, the question should nevertheless be decided for the claim is not premature merely because it is brought before a final determination of the extent of the ordinance's application to a specific piece of property after application for the proper permits has been made.
*Id.*

**5.** "Substantive due process protects a general right of an individual to be free from the abuse of governmental power." *Rymer v. Douglas County*, 764 F.2d 796, 802 (11th Cir.1985).

no substantial relation to the public health, safety, morals or general welfare.); *Greenbriar, Ltd. v. City of Alabaster,* 881 F.2d 1570, 1577 (11th Cir.1989) ("The relevant question for consideration [in this substantive due process challenge to the city's refusal to rezone certain property at Greenbriar's request] is whether there existed a rational basis for the City's rejection of Greenbriar's plan, or phrased in the alternative, whether the City's action bore no substantial relation to the general welfare."); *Couf v. DeBlaker,* 652 F.2d 585, 588 (5th Cir. Unit B 1981), *cert. denied,* 455 U.S. 921, 102 S.Ct. 1278, 71 L.Ed.2d 462 (1982), quoting *South Gwinnett Venture v. Pruitt,* 491 F.2d 5, 7 (5th Cir.) (en banc), *cert. denied,* 419 U.S. 837, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974) (" 'A zoning commission is a quasi-legislative body. . . . Its actions are entitled to a presumption of validity. The only question which federal district courts may consider is whether the action of the zoning commission is arbitrary and capricious, having no substantial relation to the general welfare.' "); *Crow–New Jersey 32 Ltd. Partnership v. Township of Clinton,* 718 F.Supp. 378, 384 (D.N.J.1989) ("A land use regulation violates the Due Process Clause of the Fourteenth Amendment if it does not substantially advance legitimate governmental interests.").

A land-use regulation will thus stand if a rational relationship exists between it and a legitimate governmental objective. *See Nebbia v. New York,* 291 U.S. 502, 537, 54 S.Ct. 505, 516, 78 L.Ed. 940 (1934) ("So far as the requirement of due process is concerned, . . . a state is free to adopt whatever economic policy may reasonably be deemed to promote public welfare, and to enforce that policy by legislation adapted to its purpose."); *Stansberry v. Holmes,*

613 F.2d 1285, 1288 (5th Cir.), *cert. denied,* 449 U.S. 886, 101 S.Ct. 240, 66 L.Ed.2d 112 (1980) (the standard traditionally applied to zoning regulations is whether the regulations are arbitrary and unreasonable, having no rational relationship to a legitimate governmental interest); *Stone v. City of Maitland,* 446 F.2d 83 (5th Cir.1971) (In adjudicating a substantive due process challenge to zoning ordinances, "the sole question is whether there is a rational relationship between the ordinance and the promotion of some aspect of the City's police power—a label which describes the full range of legitimate public interests."); *Amsden v. Moran,* 904 F.2d 748, 754 (1st Cir.1990) ("before a constitutional infringement occurs, state action must in and of itself be egregiously unacceptable, outrageous or conscience-shocking"). *See also Greenbriar, Ltd. v. City of Alabaster,* 881 F.2d 1570, 1577–80 (11th Cir.1989); *Tenoco Oil Co. v. Dep't of Consumer Affairs,* 876 F.2d 1013, 1021 (1st Cir.1989).

▮▮▮ In adjudicating substantive due process challenges to zoning ordinances, a court asks only whether a *conceivable* rational relationship exists between the zoning ordinance and legitimate governmental ends. *Tenoco,* at 1021. As we find as a matter of law that such a relationship exists, we hold that the district court was correct in dismissing the suit for failure to state a claim upon which relief may be granted.

The purposes of the Ordinance as stated in its preamble[6] are clearly legitimate government purposes. In addition, there are other proper governmental purposes that were not stated in the preamble that could conceivably have motivated the passage of the Ordinance.[7] Indeed, as the

---

**6.** The preamble to the Ordinance recites its purposes as follows:

The Zoning regulations and districts herein set forth have been made in accordance with a comprehensive plan for the purpose of promoting the public health, safety, morals and general welfare of the Town of Smithfield. They are designed to lessen congestion in the streets; to secure safety from fire, panic, and other dangers; to provide adequate light and air, to prevent the overcrowding of land; to

avoid undue concentration of population; and to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements. . . . with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout the Town.

**7.** For example, one of the three Councilmen who voted for the Ordinance was quoted in a newspaper article subtitled "Zoning ordinance is meant to protect rural areas from overdevelop-

district court stated in its opinion, controlling both the rate and character of community growth is the very purpose of land use regulation. We cannot say that the provisions of the Ordinance are not rationally related to the achievement of these purposes.

The provisions of the zoning ordinance most bitterly complained of by the plaintiffs involve the rezoning of commercial and industrial areas to residential areas, the increasing of minimum lot size to 4.6 acres in some segments of town and to 2.6 acres in others, the creation of a large number of non-conforming uses, the creation of numerous split zones, the lengthening of lot lines, the increasing of set back requirements, the decreasing of allowable density levels, and so forth. Whether or not these measures are wise or the best possible way of achieving the articulated goals, it cannot be said they are not rationally related to the legitimate state purposes listed in the preamble nor to other legitimate governmental purposes that could have motivated the adoption of the Ordinance—for example, to control and regulate growth so as to preserve the town from undesirable encroachment by industry or other specific types of development and maintain or enhance the quality of life.

Plaintiffs base their claim as to the arbitrariness of the zoning ordinance primarily upon their allegations that it was not grounded in the necessary planning and analysis, by and with the participation of experts in the field.

Although such planning and study are doubtless desirable, due process does not require a legislative body to perform any particular studies or prepare any particular analysis to justify its decisions. *Vance v. Bradley*, 440 U.S. 93, 109–12, 99 S.Ct. 939, 948–50, 59 L.Ed.2d 171 (1979); *Brotherhood of Locomotive Firemen & Enginemen v. Chicago, R.I. & Pac. R.R.*, 393 U.S. 129, 138–39, 89 S.Ct. 323, 327–28, 21 L.Ed.2d 289 (1968); *Lydo Enterprises v. City of Las Vegas*, 745 F.2d 1211, 1215 (9th Cir.1984) (rejects argument that an ordinance is invalid where no empirical findings were recited to justify its enactment); *Ebel v. City of Corona*, 698 F.2d 390, 392–93 (9th Cir.1983) ("Enactment of a zoning ordinance is a legislative act, ... and great latitude is given to legislative bodies in the procedures they may use in factfinding.") It is sufficient for the purposes of due process that the ordinance be aimed at such legitimate government purposes as "enhanc[ing] the quality of life," *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 129, 98 S.Ct. 2646, 2661, 57 L.Ed.2d 631 (1978), or protecting residents from "the ill effects of urbanization." *Agins v. Tiburon*, 447 U.S. 255, 261, 100 S.Ct. 2138, 2142, 65 L.Ed.2d 106 (1980).

A broad latitude is given to legislative bodies such as the Town Council in their legislative determinations, and it is not the province of the courts to monitor the inputs into each legislative decision.

The District Court's responsibility for making "findings of fact" certainly does not authorize it to resolve conflicts in the evidence against the legislature's conclusion or even to reject the legislative judgment on the basis that without convincing statistics in the record to support it,

---

ment" as being concerned that the town's rural nature might be destroyed by continued pressure by developers to build condominium and apartment projects. "When you start squeezing people in, you tend to destroy the open spaces in town and damage the quality of life here.... It (the Ordinance) may not be perfect, but I think it's going to help solve our density problems." The same article also noted that Town Council members in the past have said that increasing numbers of condominiums and apartments add to traffic on town streets that are already overcrowded with cars.

An earlier newspaper article stated: "Keying on issues like inadequately controlled town development and traffic congestion on Rt. 44, the Republican party in the Nov. 6 election was able to wrest majority control of the Smithfield Town Council for the first time since 1972." It appears from the article that the Republican campaign platform had included the passage of a new zoning ordinance and a moratorium on condominium construction. One newly elected Republican candidate is said to have stated that a new zoning ordinance would be "basically the key to controlling the growth of the town, multifamily dwellings as well as commercial development." It was reported that the Ordinance was passed by the votes of the three-to-two Republican majority on the Town Council.

the legislative viewpoint constitutes nothing more than ... "pure speculation." *Brotherhood of Locomotive Firemen & Enginemen v. Chicago, R.I. & Pac. R.R.*, 393 U.S. 129, 138–39, 89 S.Ct. 323, 328, 21 L.Ed.2d 289 (1968).

We find, thus, that—whether or not, as charged, the zoning Ordinance was adopted without adequate study or many of its provisions were ill-conceived—it does not offend any constitutionally-protected right to be free from legislation that is arbitrary and unreasonable, i.e., that is not substantially related to the public health, safety, morals, or general welfare.

## III. FACTUAL DETERMINATIONS BY THE DISTRICT JUDGE

Plaintiffs argue that when the district judge examined the preamble of the zoning ordinance and determined that the stated objectives were legitimate, he improperly resolved a factual dispute as to the "true" purpose of the Ordinance, which plaintiffs allege was different from the stated purpose. They allege that this factual determination made by the judge in dismissing the case for failure to state a claim upon which relief may be granted calls for a reversal.

■ However, the "true" purpose of the Ordinance, (i.e., the actual purpose that may have motivated its proponents, assuming this can be known) is irrelevant for rational basis analysis. The question is only whether a rational relationship exists between the Ordinance and a *conceivable* legitimate governmental objective. Thus, even assuming that the court intended its statement to be a factual finding, the making of such a finding would, at most, be irrelevant. *See Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1578 (11th Cir. 1989) (question of law). Since all that is required in the instant context is a determination that the Ordinance is rationally related to a legitimate government objective, and no specific "finding" of the court as to actual legislative purpose is required, the statement by the court below that the legislative purposes stated in the preamble were legitimate government purposes is best interpreted simply as a statement that, as a matter of law, the Ordinance passes constitutional muster.

## IV. LEGISLATIVE IMMUNITY

In view of our affirmance of the district court's dismissal of the case, there is no need to address defendants' argument that the three Smithfield Town Councilmen sued in their individual capacities are absolutely immune from suit because they were engaged in a purely legislative function. We note in passing, however, that numerous cases hold that when members of a town council are sued for enacting zoning regulations, they are being sued in a legislative capacity and are absolutely immune. *Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607, 611–14 (8th Cir.1980); *Bruce v. Riddle*, 631 F.2d 272, 279 (4th Cir.1980). *See also Lake Country Estates v. Tahoe Planning Agency*, 440 U.S. 391, 402–06, 99 S.Ct. 1171, 1177–79, 59 L.Ed.2d 401 (1979); *Culebras Enterprises Corp. v. Rivera Rios*, 813 F.2d 506, 518 (1st Cir.1987).

*The judgment of the district court is affirmed. Costs to appellees.*