**SOUTH COUNTY SAND & GRAVEL CO., INC., Plaintiff, Appellant,**

v.

**TOWN OF SOUTH KINGSTOWN, et al., Defendants, Appellees.**

No. 98–1530.

United States Court of Appeals, First Circuit.

Heard Nov. 4, 1998.

Decided Nov. 23, 1998.

38. *Wygant*, 476 U.S. at 292, 106 S.Ct. 1842 (O'Connor, J., concurring).

39. 951 F.2d at 450–53.

Herbert F. DeSimone, Jr., with whom De-Simone & Leach was on brief, for appellant.

Kathleen M. Powers, with whom Marc De-Sisto and DeSisto Law Offices were on brief, for appellees.

Before SELYA, Circuit Judge, COFFIN and CAMPBELL, Senior Circuit Judges.

SELYA, Circuit Judge.

For many years—the memory of man runneth not to the contrary—earth removal operators in South Kingstown, Rhode Island (the Town) were able freely to mine their properties. That privilege was tempered in 1996, when the Town Council amended its zoning ordinance. The amendments here at issue, codified as Article 4, § 411 and Article 14, § 1404 of the Town's zoning ordinance (collectively, the Amended Ordinance), prohibit businesses engaged in extractive industries from "expand[ing] horizontally in surface area by more than 25% of [their] existing excavated area" unless they first obtain a special use permit.[1]

The Amended Ordinance did not sit well with the Town's preeminent earth removal operator, South County Sand & Gravel Company (SCS). SCS sued the Town in a Rhode Island state court, claiming that the new enactment violated its rights under the Four-teenth Amendment. The Town removed the action to the federal district court. In due course, the parties cross-moved for summary judgment. The district court, adopting a magistrate judge's report and recommendation, granted the Town's motion as to SCS's federal claims, denied SCS's cross-motion, and remanded the remaining claims to the state court. This appeal ensued.

■ SCS originally advanced both procedural and substantive due process challenges to the constitutional legitimacy of the Amended Ordinance. In this venue, however, SCS pursues only the latter. In itself, this raises a threshold question. When a specific provision of the Constitution protects individuals against a particular kind of physical intrusion by government actors, individuals seeking redress for such an intrusion must assert their claims under that particular constitutional rubric instead of invoking the more generalized notion of substantive due process. *See Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion); *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *see also Collins v. City of Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (warning that courts should guard against unduly expanding the concept of substantive due process "because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended"). Because SCS's lament, at bottom, is a garden-variety regulatory takings claim, the Takings Clause, not substantive due process, would seem to supply the proper decisional framework. *See Villas of Lake Jackson, Ltd. v. Leon County*, 121 F.3d 610, 612–14 (11th Cir.1997); *Armendariz v. Penman*, 75 F.3d 1311, 1325–26 (9th Cir.1996) (en banc); *Gosnell v. City of Troy*, 59 F.3d 654, 657–58 (7th Cir.1995).[2]

---

1. Under the terms of the Amended Ordinance, a firm's "existing excavated area" is to be measured "at the time of the adoption of [the Amended Ordinance]."

2. To be sure, in an earlier case we allowed a complainant to assert an abstract challenge to an allegedly irrational zoning provision on substantive due process grounds. *See Smithfield Concerned Citizens for Fair Zoning v. Town of Smithfield*, 907 F.2d 239, 242 (1st Cir.1990). But the legal terrain has shifted considerably in the intervening years. Since we decided *Smithfield*, the cited federal appellate court cases (which analyze comparable claims under a takings, rather than a substantive due process, format) have emerged; the Supreme Court has reaffirmed *Graham*'s general approach, *see Albright*, 510 U.S. at 273, 114 S.Ct. 807; and the Court has displayed a propensity to analyze claims premised on allegedly onerous land use regulation under the Takings Clause, *see, e.g., Lucas v.*

Withal, there is no need to submit to a tyranny of labels. In this case, the district court considered the issue under the substantive due process rubric and both parties cling tenaciously to that characterization. Moreover, the distinction between the two modes of analysis is, in the present circumstances, largely a matter of semantics. Modern takings jurisprudence has relied extensively for direction on the Court's seminal opinion in *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926), see, e.g., *Agins v. City of Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980) (citing *Euclid* and adopting its "substantial relation" standard as a test for discerning the existence *vel non* of a regulatory taking), and, thus, the type of substantive due process analysis that we employed in *Smithfield Concerned Citizens for Fair Zoning v. Town of Smithfield*, 907 F.2d 239 (1st Cir.1990), is fully consonant with the Court's current approach to regulatory takings. *See id.* at 243–46 (reviewing a facial challenge to a land use ordinance by applying the substantial relation test). By the same token, *Smithfield*'s recognition that substantive restrictions on public power may invalidate land use legislation if, for example, such legislation represents arbitrary or irrational action by lawmakers, comports with modern takings jurisprudence.[3] *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1027–28, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992); *Euclid*, 272 U.S. at 395, 47 S.Ct. 114. Thus, although the substantive limits of the Takings Clause may not necessarily coincide with the substantive limits of the Due Process Clause in every imaginable context, see *Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 45 (1st Cir.1992) (leaving question unresolved), the limits are congruent in this instance.

*South Carolina Coastal Council*, 505 U.S. 1003, 1017–19, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (concluding that a regulation that deprives land of economic value is a compensable taking).

3. We are mindful of Justice Scalia's statement in *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 834 n. 3, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987), that the takings "substantial relation" standard is not necessarily identical to the "rationality" test characteristic of equal protection and substantive due process review. However, as Justice Scalia acknowledged, the Court's pre-

We proceed to the merits. The dispositive question is whether the challenged legislation bears a rational connection to a legitimate public purpose. *See Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 68, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981). This question must be framed here in light of SCS's decision not to test the Amended Ordinance in practice. Instead of following such a course, SCS pounced when the Town adopted the Amended Ordinance, and it asseverates here only that the legislation, *on its face*, works an injury to it of constitutional dimensions. Prevailing on an abstract challenge to a zoning ordinance normally is a Sisyphean task, see *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 495, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987), and the slope is even steeper since SCS makes no allegation that the challenged legislation strips its land of all significant value. Under such circumstances, we can invalidate the Amended Ordinance only if it has "no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense." *Smithfield*, 907 F.2d at 243 (citations and internal quotation marks omitted). The Amended Ordinance clears this relatively low hurdle with room to spare.

The Town claims that it needs to control the expansion of new and existing earth removal operations, among other things, in order to prevent a loss of its "natural resources including wildlife habitat, groundwater quality and scenic value." There is no dispute that these are legitimate municipal goals. *See, e.g., Berman v. Parker*, 348 U.S. 26, 33, 75 S.Ct. 98, 99 L.Ed. 27 (1954) (observing, in

cedents have not elaborated on the exact type of connection between a regulation and a state interest that is necessary to constitute a "substantial relation," let alone defined precisely the difference between the substantial relation test and rationality review. We need not probe the point today, for the outcome of this case would be the same under either standard. Thus, we use the "substantial relation" and "rational basis" concepts (and the concomitant terminology) interchangeably in this opinion.

a zoning context, that "[i]t is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clear, well-balanced as well as carefully patrolled"). It is equally free from doubt that controlling earth removal can be an appropriate means of assuring the achievement of such goals. *See generally Nollan v. California Coastal Comm'n,* 483 U.S. 825, 834–35, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987).

SCS's frontal assault on this means/ends nexus is impuissant. The best that SCS does is to assert that, if strictly applied, the 25% rule would operate unevenly: under it, a business having more acreage under excavation could expand permit-free into a comparatively greater area than a business with less acreage under excavation. As SCS sees it, this possibility demonstrates the scheme's irrationality because the amount of controlled acreage will vary from one plot of land to another even though the environmental concerns affecting both sites are the same.

SCS's argument grossly oversimplifies the issue. Even assuming *arguendo* that the expansion of a business with greater acreage under excavation would prove more environmentally harmful, a reviewing court cannot overlook that, at some level, the Town's legislation functions to balance environmental with economic concerns in a manner that protects the legitimate interests of firms that have made considerable investments in their businesses. Indeed, the effort to strike such a balance is amply evidenced by the discussion at the public hearing held before the Town Council antecedent to the adoption of the Amended Ordinance. By thus respecting investment-backed expectations, the Town is doing precisely what takings jurisprudence requires it to do. *See, e.g., Kaiser Aetna v. United States,* 444 U.S. 164, 175, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979); *Philip Morris, Inc. v. Harshbarger,* 159 F.3d 670, 675–78 (1st Cir.1998) [No. 98–1199, slip op. at 12–21].

■ Nor does the permit application process render the Amended Ordinance vulnerable to a facial challenge. The Amended Ordinance only requires that excavators apply for permits; it does not guarantee their automatic denial. Furthermore, the process, at least in theory, allows the Town closely to monitor developments on real estate containing non-conforming uses. In turn, this confirms the Amended Ordinance's utility as a means of securing the Town's legitimate ends.[4]

■ SCS's cryptic suggestion that the special permit procedures are problematic because they are standardless is equally unavailing. In the first place, the argument is wholly undeveloped—and arguments made in a perfunctory manner do not warrant consideration. *See United States v. Bongiorno,* 106 F.3d 1027, 1034 (1st Cir.1997); *Ryan v. Royal Ins. Co.,* 916 F.2d 731, 734 (1st Cir.1990). In the second place, SCS's suggestion lacks merit. Admittedly, some municipal legislation may confer such wide-ranging discretion on municipal officials as to court a diagnosis of constitutional infirmity. *See, e.g., Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 153, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). However, the discretion that the Amended Ordinance bestows on the zoning board exhibits no such symptoms. Under Article 5, § 510 of South Kingstown's zoning ordinance, the zoning board must make its individualized decisions by considering whether granting a special use permit will "result in conditions inimical to the public health, safety, morals and welfare" and whether such a grant will "substantially or permanently injure the appropriate use of property in the surrounding area or district." The town fathers did not pluck this language from thin air. *See Hester v. Timothy,* 108 R.I. 376, 385–86, 275 A.2d 637, 641–42 (1971) ("It is black letter law in this state that the grant of a special exception is preconditioned upon a showing that the exception sought is reasonably necessary for the convenience and welfare of the public and to satisfy such a stan-

---

4. SCS does not allege that the Town whimsically denies such permits as a matter of practice. Moreover, since SCS itself has not applied unsuccessfully for such a permit, any such claim would be unripe. *See Williamson County Reg'l*

*Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); *Gilbert v. City of Cambridge,* 932 F.2d 51, 57 (1st Cir.1991).

dard an applicant is required to show by competent evidence that neither the proposed use nor its location on the site would have a detrimental effect upon public health, safety, welfare and morals.") (citation omitted). Moreover, under the authority of section 511, which requires the zoning board to consider certain enumerated (and other) factors where relevant to an application for a special use permit, one would expect that, in the specific context of earth removal operations, soil erosion and sedimentation concerns would figure prominently in the decisional calculus. This sufficiently cabins the zoning board's discretion. *See Williams v. City of Columbia*, 906 F.2d 994, 998 (4th Cir.1990).

 To the extent that SCS's importunings about standardless discretion represent a back-door attempt to resurrect its procedural due process claim, that attempt is not only procedurally defaulted, but also unavailing. Rhode Island provides ample process in this regard, and what Rhode Island offers far exceeds the minima required by the Constitution. *See City of Eastlake v. Forest City Enterps., Inc.*, 426 U.S. 668, 676–77, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976). In short, there is simply no credible reason to believe that the Rhode Island courts will not repair any deficiencies in the zoning board's decisionmaking.

We are similarly unpersuaded by SCS's asseveration—based on the Amended Ordinance's provision that the 25% cushion is to be measured against excavated area existing at the time the law took effect, *see supra* note 1—that the law is unenforceable (and, thus, irrational) because the Town has taken no steps to ascertain each earth remover's acreage under excavation as of that date. To suggest that the Amended Ordinance itself violates the Constitution because the Town's administrative arm has yet to conduct surveys to determine acreage under excavation is a non sequitur. The Town's failure in that regard may make it much harder to sanction property owners who seek to excavate too much too soon, but that failure has no impact on the validity of the legislation itself.

SCS also complains that a provision of the Amended Ordinance which requires new earth removal operations to submit detailed soil erosion and sediment control plans with their special permit applications, but exempts existing operators from this requirement, renders the law unconstitutional. We are at a loss to understand how this provision affects SCS. In all events, the differential treatment constitutes a run-of-the-mine grandfathering, analogous to that contained in many laws, and substantially advances the Town's legitimate goals (for reasons similar to those previously recited).

SCS's remaining arguments are not so much directed toward the means/ends nexus, but toward the manner in which the Town adopted the Amended Ordinance. SCS submits a detailed history of the political maneuvering leading to the adoption of the legislation as proof of its arbitrariness. According to SCS, the Town began mulling ways to prevent soil erosion and sedimentation problems early in the current decade. Town officials drafted a number of proposed ordinances and submitted them to industry representatives for comment. Consistent with the model ordinances contained in the Soil Erosion and Sediment Control Act (SE/SC Act), passed by the Rhode Island General Assembly in 1982 and subsequently codified at R.I. Gen. Laws § 45–46–1 *et seq.*, none of these proposals contained a provision for special use permits.

In the spring of 1996, the Town changed course and decided not to adopt a SE/SC ordinance at all. Instead, the Town elected to amend its zoning ordinance. According to SCS, the "key feature" of this neoteric effort was the permit requirement, which, in turn, embodies the 25% rule. SCS takes umbrage that the figure selected—25%—appears not to have been based on a study or other discernible rationale. Without sparing the vitriol, SCS asserts that the figure was made up out of whole cloth by the Town's lawyer (who, SCS insists, has no particular expertise in environmental planning). To make a bad situation worse, SCS adds, no Town official whom it deposed was able to explain either the basis for, or the derivation of, the 25% figure. Given this history, SCS posits, the Amended Ordinance is irrational.

SCS's jeremiad misapprehends the nature of rationality review. Refined to bare essence, SCS is arguing that the 25% rule will not secure the Town's environmental goals. Such an argument asks us to debate the effectiveness of municipal policy—and that is well outside our compass. Whether viewed from the vantage point of substantive due process or Takings Clause jurisprudence, the means/ends nexus frames the central inquiry for an abstract challenge to a zoning law. Courts ordinarily do not look behind such legislation to determine who knew what, or to what extent (if at all) the legislative body (here, the Town Council) was informed when it made a particular judgment.[5] In the ordinary course, the background knowledge upon which enacted legislation is based is irrelevant. *See FCC v. Beach Communications, Inc.,* 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993); *Bannum, Inc. v. City of Ft. Lauderdale,* 157 F.3d 819, 822 (11th Cir.1998); *WMX Technologies, Inc. v. Gasconade County,* 105 F.3d 1195, 1201 (8th Cir.1997). Whether or not a particular piece of legislation is bad policy, it will still survive an abstract substantive due process or takings challenge as long as the means that it embodies are substantially related to a legitimate governmental purpose. *See Queenside Hills Realty Co. v. Saxl,* 328 U.S. 80, 82–83, 66 S.Ct. 850, 90 L.Ed. 1096 (1946); *Schenck v. City of Hudson,* 114 F.3d 590, 594 (6th Cir.1997); *Coniston Corp. v. Village of Hoffman Estates,* 844 F.2d 461, 467 (7th Cir. 1988).

Another major theme in SCS's broadside is its claim that the Amended Ordinance is nothing more than an endeavor to avoid the mandates of state law. This claim has its genesis in SCS's assertion that the Town elected not to pass free-standing legislation on soil erosion and sediment control because it could not devise a satisfactory way to conform its desired legislation to the SE/SC Act. This claim takes SCS down a blind alley.

If the Town purposed to evade state law—a matter on which we express no opinion—the remedy for that alleged transgression is properly within the purview of the state courts. A municipality's violation of state law, without more, is insufficient to pass as a violation of the federal Constitution. *See River Park, Inc. v. City of Highland Park,* 23 F.3d 164, 166–67 (7th Cir.1994); *Amsden v. Moran,* 904 F.2d 748, 757–58 (1st Cir. 1990); *Creative Environments, Inc. v. Estabrook,* 680 F.2d 822, 833 (1st Cir.1982). In all events, the district court remanded SCS's non-federal claims to the state superior court after disposing of its constitutional claims. Hence, SCS will have ample opportunity to seek a remedy for this alleged wrong in the proper forum.

We need go no further. Because SCS has failed to show that the Town's zoning amendments violate the Constitution, we uphold the district court's grant of *brevis* disposition. *Affirmed.*

---

5. Of course, there are limits to this rule. If, say, there were evidence that the Town had singled out SCS and passed an ordinance specifically designed to debilitate its business in retaliation for the political views of its principals, a remedy might be at hand. *See, e.g., Sameric Corp. of Del., Inc. v. City of Philadelphia,* 142 F.3d 582, 591–96 (3d Cir.1998) (discussing improper motive, bias, and deliberate abuses of power); *see also Licari v. Ferruzzi,* 22 F.3d 344, 349–50 (1st Cir.1994); *Coniston Corp. v. Village of Hoffman Estates,* 844 F.2d 461, 467 (7th cir.1988). Here, however, there is not an epsilon of evidence that SCS has been improperly singled out for unfair treatment.