DECISION
This matter comes before the Court on cross-motions for summary judgment by the Town of South Kingstown and South County Sand Gravel Co., Inc. ("South County"). South County filed its complaint with this Court on August 20, 1996, seeking a declaratory judgment that certain amendments to South Kingstown's Zoning Ordinance (the "Ordinance") enacted on July 22, 1996 (the "Amendments") are invalid.[1]
Jurisdiction is pursuant to G.L. 1956 § 9-30-1.
 Facts and Travel
The legally operative facts of this case are not in dispute. South County operates an earth extraction business on approximately one-hundred and forty-five acres that it owns in South Kingstown, Rhode Island (the "Town"). The parties agree that South County's use constitutes a preexisting nonconforming use. The Amendments at issue here, enacted on July 22, 1996, restrict the expansion of nonconforming earth removal uses to no more than twenty-five percent of the horizontal surface that had previously been used for such activities. In order to surpass the twenty-five percent limit, a landowner must apply for and receive a special use permit from the Town's Zoning Board of Review. *Page 2 
South County filed a timely appeal of the Amendments' enactment pursuant to G.L. 1956 § 45-24-71 in Washington County Superior Court on August 20, 1996. South County also requested the issuance of a declaratory judgment pursuant to § 9-30-1 invalidating the Amendments. South County's complaint claimed that the Amendments to the Ordinance deprived it of its due process rights under both the United States and Rhode Island Constitutions, as well as alleged that the Amendments were inconsistent with the Town's comprehensive plan.
The Town promptly removed the case to Federal District Court, where the District Court for the District of Rhode Island found that the Amendments did not violate South County's right to due process under the United States Constitution. However, the District Court remanded the matter to this Court for resolution of the Rhode Island constitutional and zoning claims. The First Circuit Court of Appeals affirmed the District Court's judgment in all respects. See South County Sand Gravel Co. Inc. v. Town of South Kingstown, 160 F.3d 834
(1st Cir. 1998). A review of the Court's file shows that the case was not reopened until March 22, 2006.[2]
After obtaining leave of this Court, South County filed its "Amended Complaint for Declaratory Relief" on October 22, 2007. The Amended Complaint no longer invokes this Court's jurisdiction under § 45-24-71
but is now grounded solely on its request for declaratory judgment pursuant to § 9-30-1. Count One of the Amended Complaint seeks a declaration that the Amendments violate South County's right to substantive due process under the Rhode Island Constitution. Count Two presents a second claim for declaratory relief and invalidation of the Amendments on the grounds that they violate Rhode Island's Zoning Enabling Act of 1991, codified at G.L. 1956 § 45-24-27 et seq. Each party has moved for summary judgment. *Page 3 
 Standard of Review
Rhode Island's version of the Uniform Declaratory Judgments Act, G.L. 1956 § 9-30-1 et seq., "vests in the Superior Court the `power to declare rights, status, and other legal relations.'" Bradford Assocs. v.R.I. Div. of Purchases, 772 A.2d 485, 489 (R.I. 2001) (quoting § 9-30-1). Declaratory judgments "shall have the force and effect of a final judgment or decree." Section 9-30-1. Our Supreme Court has stated that "[t]his power is broadly construed, to allow the trial justice to `facilitate the termination of controversies.'" Bradford Assocs.,772 A.2d at 489 (quoting Capital Properties, Inc. v. State, 749 A.2d 1069,1080 (R.I. 1999) (further citation omitted)). Although the Court is afforded wide latitude to resolve controversies by way of issuing a declaratory judgment, "a necessary predicate to a court's exercise of its jurisdiction under the Uniform Declaratory Judgments Act is an actual justiciable controversy." Sullivan v. Chafee, 703 A.2d 748, 751
(R.I. 1997). Thus, "trial justices may not dispense with the traditional rules prohibiting them from rendering advisory opinions or adjudicating hypothetical issues merely to resolve potential disputes."Providence Teachers Union v. Napolitano, 690 A.2d 855, 856 (R.I. 1997).
A party is entitled to summary judgment when an examination of the "pleadings, affidavits, admissions, answers to interrogatories" and other materials, viewed in a light most favorable to the non-moving party, reveals no "genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Stebbins v.Wells, 766 A.2d 369, 372 (R.I. 2001). In conducting this examination, the motion justice must draw all reasonable inferences in favor of the non-moving party. Id. Given the Court's ultimate resolution of the issues presented in this case, South County shall be treated as the non-moving party for the purposes of deciding *Page 4 
these cross-motions. As such, the Court will draw all reasonable inferences in favor of South County where factual issues are relevant to the outcome.
 Analysis
The parties' arguments may be briefly summarized. Although South County's Amended Complaint alleges that the Amendments violate its right to due process under Article 1, Section 2 of the Rhode Island Constitution, South County concedes in its Supplemental Memorandum of Law that the Amendments are facially constitutional.[3] South County instead argues that the Amendments are invalid because they violate Rhode Island's Zoning Enabling Act as interpreted by our Supreme Court. South County further posits that the Amendments' failure to comport with our Supreme Court's precedent constitutes a violation of its right to substantive due process because it should be entitled to expand its nonconforming use.
The Town in rejoinder argues that the Amendments are in accordance with Supreme Court precedent and therefore valid. Because the Amendments do not conflict with caselaw it follows — according to the Town — that the Amendments are not constitutionally infirm. The Town also argues that South County's claims are not ripe for judicial review because it has failed to exhaust its administrative remedies in that it has never sought a special use permit to expand its operations.
The first challenged Amendment states that "[a] non-conforming use of Extract Industry may expand horizontally in surface area by more than 25% of its existing excavated area at the time of the adoption of this ordinance, if granted a special use permit under the provisions of Article 5 of this Ordinance." (Defendant's Motion for Summary Judgment, Exhibit E, Ordinance *Page 5 
§ 411(B)). The second Amendment provides that "[a] non-conforming use of Extractive Industry may expand horizontally to adjacent areas of the land where such use is located, up to 25% of the excavated surface area for which such use was utilized at the time of the adoption of this Ordinance." (Def. Ex. E, Ordinance § (411(C)).[4] Thus, the plain terms of the Ordinance allow South County to expand in a limited manner — up to twenty-five percent of the previously excavated surface area — without seeking approval of the Zoning Board. Beyond that, South County is not prohibited from further expansion of its earth extraction activities; it simply must apply for and receive a special use permit.[5]
South County has not applied for a special use permit and has instead filed this declaratory judgment action asking the Court to declare the Amendments invalid. The general rule in this jurisdiction is that an individual aggrieved by an agency's action "must first exhaust administrative remedies before bringing a claim in court."Richardson v. Rhode Island Dep't. of Education, 947 A.2d 253, 259 (R.I. 2008). However, a party is not required to exhaust its remedies before bringing a facial constitutional challenge to a zoning ordinance in court under the Uniform Declaratory Judgments Act. DiRaimo v. City ofProvidence, 714 A.2d 554, 559 (R.I. 1998); see also Annicelli v. Town ofSouth Kingstown, 463 A.2d 133, 138 (R.I. 1983) (recognizing that "no reasonable basis exists for forestalling a judicial inquiry when the ordinance is challenged as patently invalid."). Neither is a party required to exhaust its *Page 6 
administrative remedies before it may bring a declaratory judgment alleging that a municipal zoning ordinance is invalid because it conflicts with the Zoning Enabling Act. M.B.T. Construction Corp. v.Edwards, 528 A.2d 336, 338 (R.I. 1987) (where plaintiff initiates a declaratory judgment action and "seeks a ruling about the validity and enforceability" of a zoning ordinance, "`[t]he determination of that question is for the courts.'") (quoting Frank Ansuini Inc. v. City ofCranston, 107 R.I. 63, 73, 264 A.2d 910, 915-916 (1970)).
Here, even though South County no longer alleges that the Amendments violate the Rhode Island Constitution on their face, it still asserts that the Amendments are facially invalid because they conflict with the Zoning Enabling Act as interpreted by our Supreme Court. Thus, the Court finds that such a legal claim is properly before it, as South County is not required to apply for a special use permit before it may bring a declaratory judgment action seeking to invalidate the Amendments.
Turning to the merits, South County has relied exclusively onTown of West Greenwich v. A. Cardi Realty Assoc., 786 A.2d 354 (R.I. 2001), to support all of its legal arguments. In fact, South County contends that the same issue that is currently before this Court has already been decided in its favor by the Cardi Court. This Court has examined our Supreme Court's opinion in Cardi and concurs that it controls the disposition here. Because the Court considers that case to be dispositive, some discussion of its procedural and factual background is warranted.
The Supreme Court in Cardi was similarly presented with a challenge to a zoning ordinance that established restrictions on earth extraction industries. Specifically, West Greenwich enacted a zoning ordinance in 1969 that required a special use permit to conduct *Page 7 
earth removal operations within the zoning district where the plaintiff owned property.[6] Id. at 357. Plaintiff Cardi owned two lots in West Greenwich, Assessor's Plat 55, lot No. 6 ("lot No. 6") and Assessor's Plat 56, lot No. 3 ("lot No. 3"). Id. at 356. Cardi acquired lot No. 3 in 1966 and began using it to conduct "limited but continuous excavation and commercial sale of earth materials from lot No. 3 from the time of purchase" — three years before the enactment of West Greenwich's zoning ordinance. Id. Cardi later acquired lot No. 6 in 1987 with the intention of conducting earth removal operations upon it. Id.
Cardi never obtained a special use permit to conduct earth removal activities on either lot, and the town issued Cardi a cease-and-desist order in 1990. Id. at 357. West Greenwich ordered Cardi to cease its earth removal activities unless and until the Zoning Board of Review granted the required special use permit. Id. The town also filed suit in Superior Court "seeking a preliminary injunction against further violation of its orders." Id. The trial justice found that Cardi had established a nonconforming use on lot No. 3, but that such use was limited in nature. Id. The trial justice ultimately issued a permanent injunction preventing Cardi from removing more than a "few truckloads" of gravel from lot No. 3 each year and from removing any material from lot No. 6. Id. Both parties appealed the issuance of the injunction to the Supreme Court. Id.
Before the Supreme Court decided the appeal, Cardi applied for the required special use permit and was turned down by the West Greenwich Zoning Board of Review. The plaintiff appealed that decision but the case was allowed to "languish" in Superior Court pending the outcome of the plaintiff's appeal of the permanent injunction. Id. at 358, n. 4. While the Supreme Court noted that the outcome of that appeal could have rendered the controversy before *Page 8 
it moot, it still proceeded to address the merits of Cardi's and the town's appeal from the entry of the permanent injunction.
The Supreme Court first held that, as a general matter, a municipality is empowered to prohibit earth extraction activities in certain zones, or to require the issuance of a special use permit before such activities may be allowed. Id. at 359. The Court explicitly held the West Greenwich ordinance to be "valid and enforceable," meaning that any new earth extraction use in Cardi's zoning district is only permissible by special use permit. Id. Thus, the Court found that Cardi's lot No. 6 was subject to the restrictions in the ordinance because it had been acquired in 1987 — almost twenty years after the enactment of the ordinance — and that it could only operate an earth extraction business on lot No. 6 if it were granted a special use permit. Id.
Lot No. 3, on the other hand, had been acquired in 1966 — several years before the ordinance was enacted. The Supreme Court found that Cardi had become "vested with a lawful nonconforming use and is entitled to excavate the resources within the confines of the area that comprises the nonconforming use" on lot No. 3. Id. at 362. The Court noted that the town's zoning ordinance provided "`that no lawful non-conforming use shall be enlarged, extended, expanded or increased without an exception by the Zoning Board of Review.'" Id. (quoting West Greenwich Zoning Ordinance, Article VIII, § 1). However, the Court stated that this restriction is "more appropriately applied to businesses and other activities that are merely situated on a parcel and not where the land itself is the resource." Id. Because the land itself is essential to the continuance of a nonconforming earth extraction use, the Court found that prohibiting Cardi from expanding its use horizontally would "have the effect of eliminating the nonconforming use, an impermissible exercise of the police power." Id. at 363. To avoid this result, the Supreme Court ultimately adopted the doctrine of diminishing returns and held that *Page 9 
"an owner of a nonconforming earth removal or extractive enterprise has the right to continue his or her operations into other areas of the parcel that can be shown, by objective evidence, to have been intended for excavation as of the date of the ordinance that rendered the use nonconforming." Id.
In order to meet that standard, our Supreme Court adopted the requirements of a New Hampshire case, Town of Wolfeboro v. Smith, 131 N.H. 449, 556 A.2d 755 (N.H. 1989). Wolfeboro set forth a three-part test: "First, [the landowner] must prove that excavation activities were actively being pursued when the [ordinance] became effective; second, [the landowner] must prove that the area that he desires to excavate was clearly intended to be excavated, as measured by objective manifestations and not by subjective intent, and, third [the landowner] must prove that the continued operations do not, and/or will not, have a substantially different and adverse impact on the neighborhood."Cardi, 786 A.2d at 363 (quoting Town of Wolfeboro, 556 A.2d at 759). Moreover, the burden of proving the intent to excavate a particular area is on the landowner and cannot be met by "merely demonstrating that an owner planned to expand at a later point or intended to expand into a given area." Id. at 364. The Supreme Court remanded the matter back to the Superior Court for findings as to the acreage of Cardi's earth extraction use on lot No. 3 and for findings as to whether Cardi could satisfy the three-part test the Court adopted from Town ofWolfeboro.[7]
Although South County concedes that the Amendments at issue here are constitutional on their face, it argues that they are invalid under Rhode Island's Zoning Enabling Act because the Supreme Court struck down West Greenwich's ordinance provisions in Cardi. However, and as *Page 10 
the Town cogently points out, the Supreme Court upheld all of the zoning ordinance provisions at issue in Cardi, including the provision requiring a special use permit before any nonconforming use could be expanded. South County has simply misconstrued our Supreme Court's holding in Cardi. Instead of invalidating that section of the ordinance requiring a special use permit to expand a nonconforming use, our Supreme Court announced the manner in which it was to be interpreted and applied to landowners who utilize their land for purposes of lawful nonconforming earth extraction activities. It is also significant that West Greenwich's ordinance requiring a special use permit to expand a nonconforming use was more restrictive than the Amendments allowing expansion of the nonconforming earth extraction use up to twenty-five percent as a matter of right that are at issue here. Because our Supreme Court upheld the more restrictive ordinance in Cardi requiring a special use permit before an extraction industry could be expanded horizontally at all, it follows — and the Court so finds — that the Amendments do not conflict with the holding in Cardi or violate the Zoning Enabling Act and are therefore valid on their face.[8]
Nevertheless, South County urges this Court to find that the Amendments are invalid because they do not mirror the language of the three-part test set forth in Cardi. According to South County, the Amendments are valid only if the test adopted in Cardi is incorporated into the text of the Amendments. South County's position is untenable because adopting its reasoning would require a municipality to redraft or amend its zoning ordinance every time the Supreme Court decides a new case affecting the interpretation thereof. This is not the law. If it were, then *Page 11 
the Cardi Court would not have affirmed West Greenwich's ordinances as written but would have instead required that they be redrafted to reflect the test that it had adopted for the first time in that very case.
Even more importantly, South County's argument wholly fails to recognize that the test in Cardi is in fact incorporated into the general body of law that the Town's Zoning Board would be required to apply in the event that South County ever applies for a special use permit to expand its operations horizontally. As an "inferior tribunal," it is "incumbent upon" the Town's Zoning Board to follow the law as announced by our Supreme Court. East Providence v. Shell Oil Co.,110 R.I. 138, 140, 290 A.2d 915, 916 (1972); see also D'Arezzo v.D'Arezzo, 107 R.I. 422, 426, 267 A.2d 683, 685 (1970) ("an opinion declares the law and the law thus announced becomes a precedent which must be followed by any inferior court"). Based on the foregoing, any failure of the Town's Zoning Board to consider and apply relevant precedent announced by our Supreme Court would constitute an error of law serving as grounds for reversal on judicial review. Thus, theCardi requirements have been grafted onto the Ordinance even though they are not explicitly set forth within its text. While the Town is certainly free to amend its Ordinance to include the three-part Cardi test, it is not required to do so as the Zoning Board is bound to apply that test even if it is not explicitly included in the Ordinance's text. Therefore, the Court finds that South County's argument that the Amendments are valid only if they directly reflect the wording of the three-part test established in Cardi is without merit.
Because South County has conceded that the Amendments are constitutional on their face, and because its argument that they are invalid as failing to comport with Cardi is unavailing, South County's remaining due process claims necessarily boil down to an "as applied" challenge. Determination of whether or not an ordinance as applied violates due *Page 12 
process requires an actual case or controversy before the Court. Although the exhaustion-of-remedies rule does not apply to a facial challenge to a zoning ordinance, it is well-established that the constitutionality of an ordinance as applied to a particular landowner may not be considered "until the administrative remedies provided by the ordinance have been exhausted." Nardi v. City of Providence,89 R.I. 437, 449, 153 A.2d 136, 143 (1959); see also Golden Gate Corp. v. Townof Narragansett, 116 R.I. 552, 567, 359 A.2d 321, 329 (1976).
Here, South County would have this Court declare that the Amendments are invalid as applied to its property despite the fact that it has yet to apply for a special use permit to expand its operations as explicitly provided for in the Ordinance. It is entirely possible that the Zoning Board would grant a hypothetical future application, obviating any need for this Court to decide the matter. Since South County has not applied for a special use permit — much less had that application denied — South County cannot have been deprived of any constitutionally protected right(s) at this time. While the Zoning Board could conceivably fail to properly apply the requirements of the Amendments as interpreted by theCardi decision, this Court shall neither speculate as to what the Zoning Board might do if presented with a special permit application nor issue an advisory opinion when there is no case or controversy before it.Sullivan v. Chafee, 703 A.2d 748, 751 (R.I. 1997) ("A declaratory-judgment action may not be used `for the determination of abstract questions or the rendering of advisory opinions.'") (quotingLamb v. Perry, 101 R.I. 538, 542, 225 A.2d 521, 523 (1967)). The Court therefore finds that the issue of the constitutionality of the Amendments as applied to South County's non-conforming earth extraction use on its property is not ripe for adjudication because South County has failed to exhaust its administrative remedies. *Page 13 
 Conclusion
Based on all of the foregoing, the Court finds that the Amendments are valid on their face in that they do not conflict with precedent handed down by our Supreme Court or with Rhode Island's Zoning Enabling Act. The Court further finds that South County's contention that application of the Amendments to its property in the Town violates its right to due process is not ripe for review as it has yet to apply for a special use permit to expand its nonconforming use. Therefore, South County's motion for summary judgment is denied. The Town's motion for summary judgment is granted and the Court shall issue a declaratory judgment that the Amendments are valid and enforceable.
Counsel shall submit an appropriate order for entry in accordance with this Decision on or before August 27, 2008.
[1] After obtaining leave of the Court, South County filed an amended complaint on October 22, 2007.
[2] Although South County has not explained why it allowed this case to remain dormant for almost eight years, the Town has not objected to the delay.
[3] South County's first Memorandum of Law asserted that the Amendments violate its right to substantive due process because they lack a rational basis. South County has subsequently abandoned this claim, stating explicitly that "[i]n the present matter, the Plaintiff is not alleging that the Amendments are unconstitutional on their face." (Plaintiff's Supplemental Memorandum of Law in Support of its Objection to Defendants' Motion for Summary Judgment and its Crossmotion for Summary Judgment at 7.)
[4] The Amendments appear today in substantially similar form in Ordinance § 202.F, which provides that
 [a] nonconforming Extractive Industrial use may expand horizontally to adjacent areas of the land where such use is located, but such expansion is limited to 25% of the excavated surface area for which such use was utilized on July 12, 1996. A nonconforming Extractive Industry use may expand horizontally in surface area by more than 25% of its excavated area on July 12, 1996, if granted a special use permit under the provisions of Section 203.
[5] South County has argued that the Amendments absolutely prohibit it from expanding its operations horizontally by more than twenty-five percent. South County has misunderstood the Amendments' provisions, as they actually give South County the right to use the entirety of its property "up to the boundaries of the yard setbacks" for earth removal with the grant of a special use permit. Ordinance § 203-B.
[6] The ordinance actually referred to a "special exception." A special exception is identical to a special use permit. Section 45-24-31(57).
[7] Note that although the Court remanded the matter to the Superior Court for further factual findings, the Court's upholding of the ordinance as written would require any other owners of nonconforming earth extraction uses who wished to expand such use laterally to apply to the town's zoning board for a special use permit in the first instance. This is precisely what the Amendments at issue here require when a property owner wishes to expand a nonconforming earth extraction use by more than twenty-five percent.
[8] South County raises a superficial argument that the Amendments violate §§ 45-24-40 and 45-24-42 because the Amendments violate the principles enunciated in Cardi. However, this Court finds that the Amendments do not violate our Supreme Court's holding in that case. Moreover, § 45-24-40 provides in pertinent part that a zoning ordinance "may allow the addition and enlargment [sic], expansion, intensification, or change in use, of nonconforming developmenteither by permit or by right" (emphasis added). The Amendments provide exactly that which is contemplated by the Zoning Enabling Act; South County may expand its nonconforming use up to a certain amount as a matter of right and must receive a permit to expand beyond that limit. South County's argument is, therefore, not convincing as there is no tension between the Amendments and the Zoning Enabling Act.