209 A.2d 227.

CITY OF WARWICK *vs.* DEL BONIS SAND & GRAVEL CO.

APRIL 19, 1965.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

ROBERTS, J. This bill in equity was brought to enjoin the respondent from engaging in an earth-removal operation, so called, on a large tract of land located in the city of Warwick presently zoned for residential uses. The cause was heard by a justice of the superior court sitting in equity, who thereafter entered a decree denying and dismissing the bill, and each of the parties is now in this court prosecuting an appeal therefrom.

The parties are agreed that the tract under consideration was acquired in 1960 by respondent, which since that time has engaged in the removal therefrom of sand, gravel, and other earth products. They agree further that the zoning ordinance, as amended December 20, 1963, prohibits the initiation of an earth-removal operation or the lateral extension of an existing operation as defined in sec. 13 of the amended ordinance after that date without first having obtained a permit to initiate or extend such an operation as provided in sec. 3.11 thereof. It is not disputed that the respondent continued to remove earth products from the tract under consideration and laterally extended its operation thereon since that date without having first obtained such a permit.

Earth removal is comprehensively defined in sec. 13 of the zoning ordinance as "The removal or extraction of any stone, sand, gravel, loam, topsoil, or other earth or earth product from a lot or parcel of land * * *" except where such removal is for the purpose of grading a lot upon which a building is to be erected, a roadway to be built, or a platting thereof to be made. In sec. 3.11, as amended, earth removal "initiated subsequent to the adoption of this amendment, or the lateral extension of existing earth removal operations beyond the existing physical or geographic limits of the lot, parcel or tract or portions thereof being so used shall not be conducted without a permit for such operation having first been issued to the operator as provided herein." In short, after the amendment an existing earth-removal operation may not be extended laterally beyond the limits of the pertinent tract of land without having first applied for and received the permit contemplated in sec. 3.11.

It is further provided in sec. 3.11 that the application is to be made of the building inspector, who is thereupon ordered to forward it to the zoning board of review for decision, and to the director of public works for his recommendations. It further provides that the board of review, before making any decision thereon, shall receive the recommendations of the director of public works and conduct a hearing thereon under the terms of sec. 14.2 of the ordinance. Thereafter, with the approval of the board of review, the building inspector is required to issue the permit sought when a surety bond has been furnished as required under sec. 3.11.6 of the ordinance.

The complainant alleged that respondent's earth-removal operations constitute a public nuisance and prayed that they be abated by the issuance of an appropriate injunction. On this issue the trial justice found specifically that the testimony "does not support a charge of the respondent being engaged in a public nuisance in the manner of the

conduct of its operations in removing sand, gravel, or earth from its premises." It is settled that the findings of a trial justice sitting in equity will not be disturbed by this court on an appeal unless shown to be clearly wrong. *Cianciarulo* v. *Tarro,* 92 R. I. 352. We noted in *Labbe* v. *Hill Brothers, Inc.,* 97 R. I. 269, 197 A.2d 305, that in these situations it is the appellant's burden to establish that the trial justice was clearly wrong in that he either overlooked or misconceived material evidence on the issue. In our opinion, the city has not sustained that burden in the instant case.

The complainant alleged also that respondent's earth-removal operations violated the provisions of sec. 3.11, as amended. The respondent, however, attacks the validity of sec. 3.11 on several constitutional grounds. It contends that sec. 3.11 constitutes a taking of property without just compensation therefor in violation of sec. 16 of art. I of the state constitution; that it violates both the equal protection and due process clauses of the fourteenth amendment to the federal constitution; and that it is, for various reasons, an invalid delegation of authority. The respondent contends further that its earth-removal operation constitutes a nonconforming use of land under a zoning ordinance.

The court, however, finding most of respondent's constitutional contentions to be without merit, went on to find that sec. 3.11 had been enacted by the city council in excess of its jurisdiction. The court stated in the decree that "it is not one of the powers which can be delegated to a Zoning Board of Review under Section 45-24-19" and that "Section 3.11 of the Zoning Ordinance of the City of Warwick, as amended, exceeds the powers delegated to the City Council by the enabling act * * *."

We are of the opinion that the trial justice did not err in concluding that the enabling act, G. L. 1956, chap. 24 of title 45, does not authorize the city council to provide in the zoning ordinance for the restrictions on the use of

land with respect to earth-removal operations thereon as are set out in sec. 3.11. First, the enabling act does not authorize the inclusion in a zoning ordinance of restrictions on the use of land that operate to proscribe the conversion of realty into marketable personalty, and, second, nothing in the enabling act authorizes the city council to enlarge the jurisdiction conferred upon the board of review by the provisions of §45-24-19 so as to include within its jurisdiction authority as provided in sec. 3.11 thereof.

This court in *Robinson* v. *Town Council*, 60 R. I. 422, 434, gave expression to the fundamental concept of zoning as it relates to the restriction of an owner's right to make a legitimate use of his land as follows: "Zoning laws *regulate* the use of property and may impair the owner's rights therein to some reasonable extent without compensation, because the legislature, acting under the police power of the state, deems the free exercise of such rights detrimental to the public interests. No landowner can complain, even though he, in common with others similarly situated, may have to forego some use of his property, so long as the power to enact zoning laws is exercised in the public interests and for the general welfare of the community, reasonably, impartially and without confiscation."

The extent to which zoning legislation may invade the right of an owner of land to make legitimate use thereof was a matter that this court considered shortly after the enabling act was adopted by the general assembly. In *City of Providence* v. *Stephens*, 47 R. I. 387, this court, circumscribing the area within which zoning legislation is operative, said at page 392: "The act, among other things, authorizes the city to regulate and restrict by ordinance 'the location and use of buildings, structures and land for trade, industry, residence or other purposes,' and further authorizes the division of a municipality into districts to carry out the purpose of the act." The limited impact of zoning

legislation is thus made clear and certainly militates against the view that zoning legislation may effect the complete elimination of a legitimate business as a permitted or conditionally permitted use in any part of a municipality.

This court has long accepted the view that the zoning power may not be exercised to preclude the right of an owner to remove earth products from his land for the purpose of converting them into a saleable commodity, but that the commercial or industrial processes by which such conversion is accomplished may be restricted as to area and regulated as to the manner in which the result is achieved. In *Morris* v. *Zoning Board of. Review*, 52 R. I. 26, a contractor had purchased several house lots for the purpose of excavating therefrom sand and clay to be used in its contracting business and applied to the zoning board for permission to store thereon the machinery used in such excavation and removal. The board granted the application, limiting the use to a two-year period, and on review by certiorari this court sustained the action of the board. The opinion discloses our tacit acceptance of the right of an owner to excavate those earth products but that the storage of the machinery used in such extraction on the land was subject to the terms of the zoning ordinance. See *DeFelice* v. *Zoning Board of Appeals,* 130 Conn. 156.

The concept of reasonable regulation of earth-removal operations as distinguished from the conditioning thereof on the procurement of a permit issued by a board of review in its unrestricted discretion is discernible in the case of *Boisvert* v. *Zoning Board of Review,* 94 R. I. 107, 178 A.2d 449. There provision is made in the ordinance for the uses permitted in a residence A district and for certain permitted uses therein by way of exception when any such use "is not injurious, noxious, or offensive to the neighborhood, and only if authorized by the Board of Review * * *." Among the uses so permitted by way of exception are "Gravel,

loam, sand, or stone removal * * *." Clearly, this ordinance provides that an earth-removal operation may be carried on by way of exception in a residence district when the board has made an antecedent finding that a grant of such exception will neither injure nor offend the neighborhood.

This is obviously an application of a fundamental principle of zoning, that is, reasonableness in the restriction of land uses. An earth-removal operation may be permitted even in a residential district when it is established antecedently that it will neither injure nor offend the neighborhood. Obviously, the establishment of these conditions precedent to an exercise of the delegated power to make the exception by the board may be defeated by a showing that the commercial or industrial character of the operation would injure the appropriate use of surrounding property or adversely affect the welfare of the community. What is significant is that the ordinance in the *Boisvert* case establishes specific norms or standards in the form of conditions precedent which control the exercise of the power in the board of review to permit or deny such a use.

In the enactment of a zoning ordinance, districts may be established wherein certain uses are permitted as of right and from which all other uses are excluded. The ordinance may, in addition, provide for conditionally permitted uses in such zoning districts in order to allow for an adjustment between land use restrictions as they affect an owner and the public interest. *Buckminster* v. *Zoning Board of Review*, 69 R. I. 396. Under our enabling act there is no other form of permitted use. Referring to the conditionally permitted use or the exception, we said: "* * * it was intended to provide boards of review with a procedure for the alleviation of restrictions on the use of land which, while not confiscatory, result in the imposition of use limitations that bear no reasonable relation to the objectives of the

police power pursuant to which such restrictions were imposed." *Bernstein* v. *Zoning Board of Review,* 99 R. I. 494, 209 A.2d 52.

Earth removal is defined in the instant ordinance in terms so comprehensive as to disclose an intent to include within the inhibitory thrust thereof any removal of earth or earth products for conversion into marketable personalty. Any earth-removal operation, however minor be its scope or desultory its exercise, is not made a permitted use in any use district within the city. The owner of land may conduct such an operation thereon only by virtue of the issuance to him by the board of review of the permit contemplated in sec. 3.11. Elaborate precautions were taken in phrasing the ordinance to keep it within the concept of zoning, that is, the reasonable regulation of land use, including provision for making such a use of land pursuant to the permit above referred to. However, the fundamental principle of zoning remains, that is, that the grant of such a permitted use of land may be made only by way of exception as contemplated in the enabling act.

Because we take this view, we now conclude that the provisions of sec. 3.11 for the issuance of the permit do not suffice to establish a valid conditional use or, in our nomenclature, an exception, in that the ordinance purports to confer upon the board of review unlimited discretion and untrammeled authority to exercise the power purported to be granted to it. In *Flynn* v. *Zoning Board of Review,* 77 R. I. 118, we rejected the contention that the city council had authority to delegate to the board of review the power granted it by the general assembly to provide for exceptions or conditionally permitted uses without at the same time prescribing norms and standards pursuant to which an exercise of the board's power was limited. We held in that case that the city council exceeded its jurisdiction when it purported to confer unlimited power to make exceptions

on the board of review in that it "purported to authorize the board not only to exercise its discretion on any application for exception, whether or not it was a special case under the ordinance as contemplated by the act, but also empowered the board to fix the limits of that discretion as it deemed desirable in accordance with its own undisclosed standards and unqualified judgment. This power belongs to the council."

The ordinance in the instant case, in our opinion, likewise purports to confer upon the board of review similar unlimited discretion to condition the issuance of the permits on the basis of such norms or standards as it may from time to time arbitrarily determine. We are aware that the ordinance contains a number of provisions which relate to the conduct of an earth-removal operation under such a permit and that it may be argued that these, in effect, are norms and standards that will give validity to the grant of power to the board of review. With this we are unable to agree. Nowhere in sec. 3.11 do we perceive the prescription of a condition or standard that must be shown to exist if the board is to have authority to exercise the power to grant permits. We do not consider the provisions of sec. 3.11.5 to be such norms or even to partake of the character of conditions precedent to the grant of the permit. They are in fact in the nature of conditions subsequent which limit or confine the manner in which the operation may be conducted under a permit after it has been issued and for a breach of which the permit may be revoked.

It is then our conclusion that the trial justice did not err in finding that in the enactment of sec. 3.11 the city council's purported grant of power to issue the permits contemplated therein was invalid. Because we reach these conclusions, we are of the opinion that we need not consider the appeal of the respondent, and we now dismiss that appeal pro forma.

546

The appeal of the complainant is denied and dismissed, the decree appealed from is affirmed, the appeal of the respondent is dismissed pro forma, and the cause is remanded to the superior court for further proceedings.

*James R. Morriss*, City Solicitor, *Howard R. Haronian*, Assistant City Solicitor, for complainant.

*Graham, Reid, Ewing & Stapleton, Eustace T. Pliakas, Edward J. Regan*, for respondent.

209 A.2d 210.
NELSON F. ANDREWS *vs.* CARL STILES.

APRIL 19, 1965.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

JOSLIN, J. This is a petition in equity in the nature of quo warranto to determine as between the parties the right and title to the office of tax assessor of the town of Exeter which office the respondent presently holds. The petitioner seeks to oust him therefrom on the ground that he was not properly elected, and in addition asks us to confirm petitioner's title to that office.

From the agreed statement of facts upon which the cause was heard by us it appears that the parties were candidates for the office of tax assessor at the general election held on November 3, 1964 at which each of them received 376 votes. Stating in its vote that a vacancy existed in the office of tax assessor because of the failure of the electors at the general election to elect a tax assessor, the town council on November 13, 1964 appointed respondent to that office which he assumed on November 18, 1964. Subsequent to that appointment, but prior to respondent's taking office, petitioner on November 16, 1964, pursuant to G. L. 1956, §17-19-36, challenged the correctness of the earlier declaration of the result of the election as applied to him and petitioned the state board of elections to open the voting machines upon which his name appeared at the general election. Following that request, the state board on November 17, 1964 advised petitioner that the vote as previously tabulated was correct. Thereafter on November 24, 1964 the town council elected petitioner tax assessor. In the interval between the two appointments, however, the composition of the town council had changed and the persons who had been elected at the general election assumed office in replacement of the holdover members who had appointed respondent to the office of tax assessor.

At the outset we note that petitioner has incorrectly designated his petition as one in quo warranto. A petition

for quo warranto lies to oust an illegal incumbent from office and not to induct the legal officer into it. *State* v. *Lane,* 16 R. I. 620; *State* v. *Kearn,* 17 R. I. 391; *State* v. *Smith,* 17 R. I. 415; *Black* v. *Cummings,* 62 R. I. 361. It is a discretionary writ, *State* v. *Brown,* 5 R. I. 1, and requires the intervention of a public officer. *O'Brien* v. *Board of Aldermen,* 18 R. I. 113; *Ney* v. *Whitley,* 26 R. I. 464.

A petition in equity in the nature of quo warranto is a statutory proceeding which stands on a different basis. When brought by one who claims title to office and who seeks the ouster of the incumbent, it does not require the intervention of the attorney general. *Black* v. *Cummings, supra; McGroarty* v. *Ferretti,* 56 R. I. 152. Here petitioner seeks both the ouster of respondent and the confirmation of his own right and title to that office. Even though designated as a petition for quo warranto, it is in substance and form a petition in equity in the nature of quo warranto and will be so considered by us.

We now turn to the merits. The controlling statute is §45-4-9 which in pertinent part provides that: "In case any town shall, *on the day of any such election* for town officers, fail to elect any of the officers whom they may lawfully choose, except town clerk, town council, and town treasurer, the said officers shall be elected by the town council of the town at their next meeting * * *." (italics ours) The issue is when the failure to elect occurred.

The petitioner argues that the critical date for purposes of resolving that question is when the state board of elections, following a petition for a recount, announces the result of its retabulation of the votes, and he contends that respondent's appointment to the office by the holdover town council was void because it occurred on November 13, 1964 which was prior in time to the declaration by the state board of elections.

We find no merit in that contention. It is the votes which

determine elections. 2 Cooley, Constitutional Limitations (8th ed.) chap. XVII, p. 1405. Here, because of the tie vote there was a failure to elect. *Thorpe* v. *Fales,* 33 R. I. 394; *State ex rel. Sprague* v. *Town Council,* 42 R. I. 13. That failure occurred on election day. That result is not altered because a certificate of election may not issue until the expiration of the time fixed for petitioning for a recount or, in the event such a petition is filed, until it shall have been finally determined. Whether that certificate issues following the original tabulation by the local canvassing authority or subsequent to the recount by the state board of elections is of no concern. In either event it relates back to the time when the voters expressed their preferences at the polls, and whether there has been a failure to elect is determined as of election day.

There being a failure to elect on that day, the then incumbent town council at its next meeting, pursuant to the authority and the directive of §45-4-9, elected respondent to fill the vacancy in the office of tax assessor.

It is for the legislature and not for us to determine the wisdom of permitting the filling of vacancies by a holdover council whose membership may consist of a majority whose political persuasions are different from those elected as their successors.

In our opinion the respondent is legally entitled to the office of tax assessor in the town of Exeter, and the petitioner has no valid title in that office.

The petition is denied and dismissed, and on April 26, 1965 a decree in accordance with this opinion may be presented for entry by the court.

*F. Monroe Allen,* for petitioner.

*John G. Coffey, Paul P. Pederzani, Jr.,* for respondent.