May 19, 2025

Boyang Song et al.            :

v.            :

Evan Lemoine, in his capacity as            :
President of The 903 Condominium
Owner's Association, Inc., et al.

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Boyang Song et al.      :

v.      :

Evan Lemoine, in his capacity as      :
President of The 903 Condominium
Owner's Association, Inc., et al.

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Lynch Prata, for the Court.**  The plaintiffs, Boyang Song (Song) and Travis McCune (McCune) (collectively, plaintiffs), appeal from a Superior Court judgment in favor of the defendants, Evan Lemoine (Lemoine), in his capacity as President of The 903 Condominium Owner's Association, Inc., and Stephen Rodio (Rodio), in his capacity as Secretary of The 903 Condominium Owner's Association, Inc. (collectively, defendants).[1]  The plaintiffs are owners of a unit at The 903 condominium complex (the complex) and brought this action against the defendants, the president and secretary of the association's board (the board), after

---

[1] On February 14, 2025, we granted the motion by the Community Associations Institute (CAI) to file an amicus curiae brief pursuant to Article I, Rule 16(h) of the Supreme Court Rules of Appellate Procedure.  We thank the CAI for presenting the Court with an informative brief.

the defendants failed to include the plaintiffs' specific agenda items in a special-meeting petition. The Superior Court consolidated the plaintiffs' motion for a preliminary injunction with a trial on the merits. After a three-day nonjury trial, the Superior Court found in the defendants' favor. For the reasons set forth herein, we vacate the part of the judgment of the Superior Court finding in favor of the defendants.

## Facts and Travel

The complex is a 330-unit condominium space located in Providence, Rhode Island. The complex is affixed with one gas meter that tracks consumption for every unit in the facility. Each unit contains one "submeter" or "timer" that determines individual usage based on the amount of time a boiler is activated. In turn, the association receives one gas bill and invoices the charges to the complex owners based on the timer readings in their units. By the spring of 2023, accurate readings became increasingly problematic to attain because of timer failures and difficulty repairing faulty timers. The board undertook an effort to address the malfunctioning timers by investigating an alternative method of measurement.

Ultimately, the board pivoted from a usage-based billing formula to the "ratio utility billing system," which accounts for occupancy and square footage. The plaintiffs submit that the multi-factored, occupancy-based formula conflicts with the complex's governing documents and the Rhode Island Condominium Act (the act).

On April 5, 2023, plaintiffs filed a petition to call a special meeting of the board to "increase [b]oard to [o]wner transparency on the decisions, process, and plans on the gas metering and billing that has resulted in high estimates for gas bills." Lemoine responded via email on April 11, 2023, that a special meeting was unnecessary because plaintiffs could raise their concerns at an open forum at the next meeting of the complex's unit owner's association (the association) on April 25, 2023. He further stated that the board had already provided the answers sought in the petition and that high estimates could be blamed on rising gas prices. On May 19, 2023, the regional property manager for the association signed an agreement for gas billing with a third-party company.

Unsatisfied with the board's response and the new contract, plaintiffs, along with twenty-five other unit owners, submitted another petition requesting a special meeting to address four "motions." The petition met the requisite signature mandate set forth in the complex's bylaws (bylaws) and attached a proposed form of notice and agenda. The petition sought votes on four matters; specifically, it stated:

> "FIRST MOTION: To prohibit the Executive Board from using any formula for assessing gas expense that conflicts with the declaration of condominium, as amended, or with the Rhode Island Condominium Act.

> "SECOND MOTION: To direct the Executive Board to obtain and provide every unit owner with cost estimates for repairing and/or replacing the gas metering and submetering infrastructure of the condominium within 60 days after the Special Meeting.

"THIRD MOTION: To direct the Executive Board to call a second special meeting of the Association not less than 30 days or more that [*sic*] 60 days after the Executive Board provides cost estimates for repairing and/or replacing the gas metering and submetering infrastructure of the condominium at which the Association may vote whether to perform the necessary repairs.

"FOURTH MOTION: To adjourn the Special Meeting."

The proposed notice provided that the four motions were "anticipated to be acted upon at the Special Meeting." The proposed agenda restated the four motions. According to plaintiffs, the purpose of the special meeting was to allow the unit owners to "democratically" establish a plan for gas billing. The plaintiffs aver that they were "preparing for a 'proxy fight'" at the meeting due to the association's historic "trouble assembling a quorum." The board reviewed the proposed notice and determined that it "was not proper because it was too narrow," with the board favoring more broad discussions. Lemoine then mailed all unit owners a notice on June 8, 2023, notifying each of a special meeting on June 20, 2023. The notice stated:

"Please be advised that in accordance with Article [2], Section 5 of the [b]ylaws, a special meeting of the [a]ssociation will be held for the purpose of discussing and entertaining motions relating to the methods by which utilities that are billed to the association in bulk from providers are apportioned and billed to individual units."

Unhappy with the "completely defective" notice, plaintiffs filed a complaint in Superior Court and moved for a temporary restraining order and preliminary injunction to prevent the meeting. The verified complaint, signed by McCune, did not advance claims against the board or association; rather, Lemoine and Rodio were the sole defendants. The verified complaint includes two causes of action for: (1) injunctive relief under G.L. 1956 § 34-36.1-4.17; and (2) punitive damages and attorneys' fees pursuant to § 34-36.1-4.17.

On June 15, 2023, following an *ex parte* hearing, a justice of the Superior Court granted plaintiffs' motion for a temporary restraining order, preventing the June 20, 2023 special meeting. The defendants filed an emergency motion to reconsider the temporary restraining order. The plaintiffs then submitted a motion to consolidate the preliminary injunction proceeding with a trial on the merits, to which defendants objected. On June 23, 2023, the Superior Court granted plaintiffs' motion and scheduled the matter for a trial on count I, severing count II, a claim for punitive damages and attorneys' fees, for hearing at a later date.

During the trial, the trial justice requested that the parties submit supplemental briefing addressing the meaning of "purpose" (as used in Article 2, § 5 of the bylaws) and "items on the agenda," from § 34-36.1-3.08. The defendants submitted their answer to the verified complaint on July 12, 2023, and asserted counterclaims

pursuant to § 34-36.1-3.20. The plaintiffs filed a motion to dismiss the counterclaims the following day.

Thereafter, the Superior Court issued a decision on count I of the verified complaint. The trial justice determined that a conflict existed between "purpose" as defined in the bylaws and "items on the agenda" from the statute. He ultimately concluded that "items on the agenda" had a more specific definition and that the statute must prevail to govern the dispute. The trial justice found that notice of the special meeting sent by the board was insufficient because it merely provided the purpose of the meeting and did not contain an agenda with specific items.

However, the analysis did not end there. The Superior Court went on to determine that plaintiffs' special-meeting notice was improper because it did not set forth valid transactable business within the association's authority. The trial justice concluded his decision by noting that the association had other remedies available to it, including removing board members and amending the bylaws to require cost estimates for future projects. He rejected plaintiffs' attempt to "micromanage" the board with a special-meeting notice containing items the association lacked power to vote on. Consequently, the trial justice found for defendants as to count I of the verified complaint. An order to this effect entered on July 25, 2023.

Almost three months later, defendants filed a motion for entry of final judgment pursuant to Rule 58 of the Superior Court Rules of Civil Procedure. The

defendants asserted that plaintiffs' remaining claim, which sought punitive damages and attorneys' fees, was predicated on plaintiffs' success on count I and now requires judgment in defendants' favor due to the favorable outcome on count I. The plaintiffs took issue with the motion, noting that defendants' counterclaims had not been adjudicated and that defendants improperly sought to bar plaintiffs from appealing the trial justice's decision. After dismissing defendants' counterclaims, the trial justice entered judgment in defendants' favor on all counts of plaintiffs' complaint, and in favor of plaintiffs on defendants' counterclaims. The plaintiffs then filed a timely notice of appeal.

### Standard of Review

"A judgment in a nonjury case will be reversed on appeal when it can be shown that the trial justice misapplied the law, misconceived or overlooked the material evidence or made factual findings that were clearly wrong." *Cathay Cathay, Inc. v. Vindalu, LLC*, 962 A.2d 740, 745 (R.I. 2009) (quoting *Town of West Greenwich v. A. Cardi Realty Associates*, 786 A.2d 354, 357-58 (R.I. 2001)). "Otherwise, we are deferential to the trial justice's findings of fact and give them great weight." *Id.* "We will, however, review pure questions of law that have been presented on appeal on a *de novo* basis." *Id.* Likewise, "[t]he issuance and measure of injunctive relief rest in the sound discretion of the trial justice." *Knudsen v. DeJean*, 311 A.3d 102, 109 (R.I. 2024) (quoting *Martin v. Wilson*, 246 A.3d 916,

- 7 -

923-24 (R.I. 2021)). "On review, the decision of the trial court made in the exercise of a discretionary power should not be disturbed unless it clearly appears that such discretion has been improperly exercised or that there has been an abuse thereof." *Id.* (quoting *Martin*, 246 A.3d at 924).

## Discussion

The plaintiffs first argue that the trial justice failed to enforce § 34-36.1-3.08 by declining to order defendants to reissue the special-meeting notice with plaintiffs' motions. The plaintiffs label the trial justice's conclusions "an advisory opinion" that resulted in a declaratory judgment that neither party sought. The plaintiffs also submit that the Superior Court mischaracterized plaintiffs' motions and demands as "actual actions."

Next, plaintiffs contend that their various motions were simply an "item of business" that would facilitate solutions for the gas metering issue. The plaintiffs further submit that any issues with phraseology of the motions should have been dealt with by means of amendments during the meeting and not disallowance of a special meeting. According to plaintiffs, the re-written special-meeting notice was improper because it did not apprise unit owners of the items to be addressed at the meeting.

Moreover, plaintiffs declare that, had defendants and the Superior Court read pertinent sections of Robert's Rules of Order (Robert's Rules) together, plaintiffs'

- 8 -

proposed meeting notice would have sufficiently informed the unit owners of the motions that would be addressed at the meeting. The plaintiffs continue that the Superior Court's ruling on the validity of the motions was premature because no action had been taken.

Additionally, plaintiffs submit that both defendants and the trial justice incorrectly concluded that a detailed form of notice was not permitted. The notice, they argue, should have been sufficiently detailed to allow unit owners to determine whether they wanted to attend the meeting or designate a proxy to vote on their behalf. The plaintiffs aver that the trial justice's analysis of the word "conduct" from the bylaws was "hypertechnical" and that he improperly disregarded Robert's Rules.

In retort, defendants argue that the trial justice did not err in reaching his conclusion because the board has broad discretion to manage the affairs of the complex. The defendants point to both the act and the complex's governing documents to support their position that the board retains the authority to do anything so long as it is not prohibited by the act. The defendants continue that the trial justice properly evaluated the viability of plaintiffs' four motions because each did not comply with the act. The defendants advance that the motions did not present transactable business that would entitle unit owners to vote on the motions.

The defendants conclude by emphasizing that the board acted in good faith and that plaintiffs obstructed democracy by preventing the special meeting from

taking place. Finally, defendants caution against expanding the Superior Court's decision to allow the unit owners to determine the exact wording of a meeting notice.

"When the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *In re J.T.*, 252 A.3d 1276, 1280 (R.I. 2021) (brackets omitted) (quoting *Crenshaw v. State*, 227 A.3d 67, 71 (R.I. 2020)). "Furthermore, 'in effectuating the Legislature's intent,' this Court reviews and considers 'the statutory meaning most consistent with the statute's policies or obvious purposes.'" *Id.* (quoting *Providence Teachers' Union Local 958, AFT, AFL-CIO v. Hemond*, 227 A.3d 486, 494 (R.I. 2020)).

In 1982 the General Assembly adopted Rhode Island's version of the Uniform Condominium Act, which applied to any condominium created in Rhode Island after July 1, 1982. *See* § 34-36.1-1.02(a)(1). The act "as a whole contains a strong consumer protection flavor * * *." *America Condominium Association, Inc. v. IDC, Inc.*, 844 A.2d 117, 128 (R.I. 2004) (quoting *One Pacific Towers Homeowner's Association v. HAL Real Estate Investments, Inc.*, 61 P.3d 1094, 1100 (Wash. 2002)). "[W]hen the administration of a condominium complex is at issue, 'the condominium statutes and the declaration control the relationship between the parties.'" *Town Houses at Bonnet Shores Condominium Association v. Langlois*, 45

A.3d 577, 582 (R.I. 2012) (brackets omitted) (quoting *Artesani v. Glenwood Park Condominium Association*, 750 A.2d 961, 963 (R.I. 2000)).

Relevant to this dispute, § 34-36.1-3.08 provides that "[s]pecial meetings of the association may be called by the president, a majority of the executive board, or by unit owners having twenty percent (20%), or any lower percentage specified in the bylaws, of the votes in the association." Additionally, notice of that meeting "must state the time and place of the meeting and the items on the agenda, including the general nature of any proposed amendment to the declaration or bylaws, any budget changes, and any proposal to remove a director or officer." Section 34-36.1-3.08. This is exactly what plaintiffs attempted to do with the proposed meeting notice attached to the petition.

Rather than use the proposed notice, the board sent its own notice. The trial justice correctly determined that the sent notice did not meet the statutory requirements. The defendants did not appeal that determination; hence, we need not address that portion of the decision. However, the matter before the Court is the propriety of the trial justice's analysis of the merits of plaintiffs' motions contained within the meeting notice proposed by plaintiffs. The plaintiffs label the trial justice's decision on the validity of the motions an "advisory opinion" that should have concluded when the trial justice found that the special-meeting notice prepared by the board was insufficient. We agree.

The declaration states that the bylaws provide the relevant governance provisions, and Article 2, § 5 of the bylaws states: "The President shall call a special meeting of the [a]ssociation upon a petition signed and presented to the Secretary by at least twenty (20) [u]nit [o]wners." The plaintiffs satisfied their obligation to obtain the requisite number of signatures. The proposed notice stated the time and place of the meeting and included an agenda, all in compliance with § 34-36.1-3.08. The purpose of the meeting was to discuss the specific issues as listed allowing the unit owners to determine whether or not to attend the meeting, vote on plaintiffs' positions, or even propose their own solution. The intent of the act is to promote consumer protection. *See America Condominium Association, Inc.*, 844 A.2d at 128. The act requires a liberal judicial interpretation with a preference towards ensuring that association members have a say in how their organization is run. *See id.* It is imperative that lay unit owners have the ability to draft a petition without fear of strict judicial scrutiny over imperfect language.[2] Refusing to issue the notice of the special meeting, which comports with the bylaws and the act, runs afoul of that intent. These unit owners were entitled to the meeting they sought.

The plaintiffs' claim centered on the board's own rendition of the meeting notice sent to unit owners, not the notice submitted by plaintiffs. In evaluating each

---

[2] The defendants' counsel represented at oral argument that the board has since adopted plaintiffs' desired gas meter formula. Therefore, mootness should be a consideration on remand.

- 12 -

item on plaintiffs' agenda individually, it is clear that the trial justice overstepped by granting relief not sought by the parties because "[u]nder the general principles of the adversary system, a party should not be granted relief that it did not request." *Providence Journal Company v. Convention Center Authority*, 824 A.2d 1246, 1248 (R.I. 2003); *see also Mill Road Realty Associates, LLC v. Town of Foster*, 326 A.3d 1085, 1088-89 (R.I. 2024) (taking exception to a trial justice's *sua sponte* ruling on an issue not addressed by the parties); *Bruce Brayman Builders, Inc. v. Lamphere*, 109 A.3d 395, 398-99 (R.I. 2015) (determining that the trial justice should have informed the parties before considering an issue not raised by either); *Catucci v. Pacheo*, 866 A.2d 509, 515 (R.I. 2005) ("[W]hen a trial justice considers and rules on an issue *sua sponte*, the parties must be afforded notice of the issue and allowed an opportunity to present evidence and argue against it.").

The plaintiffs further appeal from the judgment in the defendants' favor on the plaintiffs' request for attorneys' fees and punitive damages pursuant to § 34-36.1-4.17. The provision awards punitive damages for "willful failure to comply with [the act]." Section 34-36.1-4.17. The trial justice entered judgment on count II after the trial because the plaintiffs conceded that that claim hinged on the success of count I. Because the trial pertained to only count I of the complaint with the damages claim severed, the plaintiffs have a right to be heard on this issue. However, we note that counsel acknowledged at oral argument that a damages figure

- 13 -

would likely be nominal, and the defendants may have immunity from damages under the association's bylaws. Nevertheless, proceedings on count II are warranted as a result of this decision.[3]

## Conclusion

For the reasons set forth herein, we vacate the part of the judgment of the Superior Court finding in favor of the defendants, and this matter is remanded for further proceedings consistent with this opinion.  The papers may be returned to the Superior Court.

---

[3] At the conclusion of their brief, the plaintiffs request that we reassign this matter to a different trial justice.  We decline to take this extraordinary step.  There is nothing in the record to suggest the trial justice displayed a bias that would inhibit his judgment on the matter in further proceedings.